**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-08-01829-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| 75.746 Acres of Land, more or less, situate in Maricopa County, State of Arizona, et al., | |
| Defendants. | |

The court has before it the United States' motion for partial summary judgment (doc. 51), defendants Ashby Investment Company and Ashby Land, LLC's response (doc. 54), and the government's reply (doc. 55).

**I.**

On October 6, 2008, the government filed a declaration of taking concerning a portion of defendants' farmland near Luke Air Force Base in Maricopa County, Arizona. The estate to be taken is an easement over about 76 acres of defendants' 211-acre property. The easement permits the government to do certain things designed to facilitate the operation of Luke Air Force Base, and it restricts defendants' use of the property. Land in the vicinity of the base is also subject to a number of complex regulations apart from the easement. Since about 1982, the property has been leased to Bickman Farms, which grows rose bushes, among other crops, and pays defendants annual rent. The lease runs through 2010.

As evidence of just compensation in this condemnation proceeding, defendants intend to offer the expert testimony of Stephen Brophy, an appraiser who has investment and agricultural experience in the area. Brophy has an interest in Santa Lucia Farms, which also grows rose bushes near Luke Air Force Base. In his appraisal, he evaluated the diminution of value of the entire 211-acre property in order to determine the effect of the easement. Due to prior restrictions affecting the approximately 76 acres subject to the easement, Brophy concluded that the subject property's pre-condemnation highest and best use was agricultural. He valued it using an income-based approach. He also concluded that the highest and best use for the less-restricted portion of defendants' property was, and still is, industrial. Brophy valued this land using a sales comparison approach.

The parties offer excerpts from a standard industry text on appraising, which, although helpful, largely confirm the importance of hearing expert testimony at trial in this case. According to our understanding, the income-based approach in question incorporates the annual net operating income from an income-producing property and a capitalization rate, which is an expression of a potential buyer's expectations considering associated risks and market conditions. The approach is designed to determine what a buyer would pay at the present time for the anticipated future benefits of owning a property.

In contrast, the sales comparison approach determines what a buyer would pay at the present time based on what other buyers have paid for similar properties in the past, presumably in anticipation of future benefits to the extent that the properties were income-producing. Thus, one can extrapolate an appropriate capitalization rate in a given market from the net operating income and sale prices of comparable properties. On the other hand, if there are few comparable sales, the income-based approach provides an alternative valuation method where net operating income and a capitalization rate can be estimated.

When applying the income-based approach, Brophy used cost and revenue information from rose bush farming at Santa Lucia Farms instead of Bickman Farms, which operates on the subject property. He also estimated a capitalization rate based on his market experience instead of deriving one from comparable sales. The parties dispute whether the

sales Brophy used to value the less-restricted portion of defendants' property could serve as comparable sales for valuing agricultural property. Brophy concluded that the only relevant sales of agricultural property in the area were completed in contemplation of future industrial development, and thus were not useful to value property restricted to agricultural uses.

In advance of a bench trial set to determine defendants' just compensation pursuant to Rule 71.1(h), Fed. R. Civ. P., the government moves for partial summary judgment with respect to defendants' proposed use of the income-based approach.

## II.

The Fifth Amendment to the United States Constitution prohibits the taking of private property without just compensation. Just compensation is usually expressed as the market value of a property at the time of a taking, that is, "what a willing buyer would pay in cash to a willing seller," United States v. Miller, 317 U.S. 369, 374, 63 S. Ct. 276, 280 (1943), in consideration of the "highest and most profitable use" of the property. Olson v. United States, 292 U.S. 246, 255, 54 S. Ct. 704, 708 (1934). The owner has the burden of establishing the market value of the condemned property with competent evidence. See United States v. 174.12 Acres of Land, 671 F.2d 313, 314 (9th Cir. 1982). Competent evidence includes expert testimony that would assist the trier of fact, if it is both based on sufficient facts or data and the product of reliable principles and methods applied reliably. Rule 702, Fed. R. Evid.; see Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-90, 113 S. Ct. 2786, 2795 (1993). In effect, the government moves to exclude Brophy's testimony because it would not assist the trier of fact and it is the result of an unreliable application of the income-based approach without sufficient information.

The government contends that defendants impermissibly seek future lost profits as consequential damages through the income-based approach. Just compensation does not encompass consequential damages, such as future lost profits. See Omnia Commercial Co. v. United States, 261 U.S. 502, 509, 43 S. Ct. 437, 438 (1923). In response, defendants maintain that they are not requesting consequential damages. We agree. The government is apparently concerned that the income-based approach is tantamount to a determination of

1 future lost profits because it derives the present value of a property from the anticipation of
2 future benefits. However, the approach uses the perspective of a potential buyer in the
3 market, not expectations specific to the property owner. Therefore, it is not a measurement
4 of the owner's future lost profits. Despite its reservations, the government does not dispute
5 that the income-based approach is an approved appraisal method in the Ninth Circuit. See
6 United States v. 99.66 Acres of Land, 970 F.2d 651, 655 (9th Cir. 1992). We reject the
7 government's general concerns with the approach itself.

Next, the government argues that Brophy's application of the income-based approach is unreliable because he uses estimated income from farming operations on the subject property instead of defendants' income from leasing the property. There are several reasons why the lease could be significant. If the property were encumbered by a non-market-rate or long-term lease, it might affect what a potential buyer would be willing to pay for the property. But the parties apparently agree that the Bickman Farms lease was near the market rate, and it extended for only several years beyond the date of the taking. In any case, the government does not contend that the lease affected the property's market value.

It is also possible that applying the income-based approach to defendants' longstanding income from lease payments would render a more accurate market value than applying it to estimated income from farming operations. But the government does not contend that this analysis would yield a different market value, nor does it suggest that agricultural appraisers favor leasing income over farming income when applying the income-based approach. Rather, the government reasons that, because defendants earn income from leasing and not from farming, "the application of the income approach in this instance does not reflect the market value of the property to the owner." Motion for Partial Summary Judgment at 2-3. As mentioned above, however, the income-based approach determines a property's market value from the perspective of a potential buyer, as it must. The value of the property cannot be specific to its owner and still be a market value. We reject the government's contention that Brophy unreliably applied the income-based approach by failing to incorporate defendants' lease payments.

The government also challenges Brophy's decision to use financial information from Santa Lucia Farms instead of Bickman Farms. We share the government's skepticism of an income-based valuation of a property that does not include an evaluation of the property's actual production of income. Defendants contend that Brophy's use of information from Santa Lucia Farms as a proxy was appropriate in this case because the farm grows rose bushes in the same area as the subject property and Brophy had personal knowledge of its costs and revenue over a three-year period. While Brophy's lack of knowledge of the subject property's income production is problematic, we conclude that, under the circumstances, it goes to the weight of his testimony and does not render it inadmissible for lack of sufficient information.

Finally, the government challenges Brophy's use of an estimated capitalization rate. Defendants maintain that Brophy's substantial investment and farming experience in Arizona qualify him to estimate a reasonable capitalization rate for agricultural property in the area of Luke Air Force Base. Given the apparent lack of comparable sales of property restricted to agricultural uses from which a capitalization rate could have been derived, Brophy's estimation of a capitalization rate from market experience does not render his testimony unreliable.

Accordingly, **IT IS ORDERED DENYING** the United States' motion for partial summary judgment (doc. 51).

DATED this 7th day of April, 2010.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge